

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

FILED BY_____ _D.C._

FEB 07 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

| | |
|---|---|
| ERIC SMITH, | **CIVIL ACTION** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| FREERATEUPDATE.COM, LLC, a foreign corporation, | |
| Defendant. | |

## COMPLAINT

1.    Plaintiff, Eric Smith ("Smith") brings this action against Defendant FreeRateUpdate.com LLC ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### NATURE OF THE ACTION

2.    Through this action, Smith seeks injunctive relief to halt the ceaseless sending of unsolicited telemarketing text messages which promote and encourage the purchase of goods or services by the Defendant, and to secure redress for injury by its conduct which violates the TCPA. Smith alleges as follows upon personal knowledge, experience, investigation, and, as to all other matters, upon information and belief:

1

3.      Defendant FreeRateUpdate.com LLC provides a lead generation service that matches consumers to mortgage lenders for a fee.

4.      Defendant conducted (and continues to conduct) a wide–scale telemarketing campaign that features the repeat sending of unsolicited text messages to the cellular telephone numbers of consumers, specifically, Smith's cellular telephone, which appears on the National Do Not Call Registry and without any prior consent—**in direct violation of the TCPA.**

5.      By sending the text messages at issue in this Complaint, Defendant caused Smith actual harm and cognizable legal injury. This includes invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Smith's daily life, a loss of value realized for the monies paid to Smith's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Smith's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.  In response to Defendant's unlawful conduct, Smith seeks injunctive relief requiring Defendant to cease from continuing to send any further unsolicited telemarketing text messages to his cellular telephone. Smith also seeks statutory damages and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper under 28 U.S.C. § 1331 as Smith alleges violations of a federal statute.

7.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because: (1) Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction; (2) Defendant provides and markets its services within this district; (3) Defendant has a corporate office within this district; and (4) Defendant has a designated an agent for service of process in the State of Florida; Defendant has thereby established sufficient contacts, thus, subjecting itself to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and within this District.

**PARTIES**

8.      Plaintiff Eric Smith is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

9.      Defendant is a corporation incorporated and existing under the laws of the State of Nevada whose principal place of business is located at 5 Christy Drive, Suite 204, Chadds Ford, Pennsylvania 19317.

10..      Defendant is registered to do and is doing business in Florida, including in the Southern District.

11.      Defendant's registered agent for service of process is Registered Agent Solutions, Inc. located at 155 Office Plaza Drive, Suite A Tallahassee, Florida 32301.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

12.      The TCPA was passed into law in 1991. The TCPA regulates and restricts the use of automatic telephone equipment.

3

13.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

14.     In an action under the TCPA, a plaintiff must only show that the defendant "called a  number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

16.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's company specific do-not-call list. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d). The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

17      The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous *written* disclosure must be provided to the individual. *See 2012 FCC Order*, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or prerecorded telemarketing calls....").

18.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can

be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19.      In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20.      To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'*clear and conspicuous disclosure*' of the consequences of providing the requested consent....and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21.      The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, *a court must evaluate the ultimate purpose of the communication. See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22.    "Neither the TCPA nor its implementing regulations '*require an explicit mention of a good, product, or service*' where the implication of an improper purpose is '*clear from the context.*'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

23.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.

24.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

25.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

26.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978,

at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained plaintiff's prior express consent before sending a telemarketing text message).

27.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14–55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

28.    The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing In re Joint Petition Filed by Dish Network, LCC, 28 FCC. Rcd. 6574, 6574 (2013)). Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b). *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) (citing 28 F.C.C. Rcd. at 6590 n. 124). A ratification occurs when the benefits of the purportedly  unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement. *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 631 (Fla. 2d DCA 2010).

## **FACTUAL ALLEGATIONS**

29.    At all times relevant, Smith was a citizen of the State of Florida. Smith is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

30.     Defendant FreeRateUpdate.com LLC is a lead generation company who provides leads, and consumer information, which jt acquires unlawfully, to mortgage lenders and brokers for a fee.

31.     Defendant directs and markets its unlawful business activities throughout the United States of America including the State of Florida.

32.     Upon information and belief, Defendant, in attempt to drum up business, fliched the cellular telephone number of Smith, then proceeded to send or cause others to send unsolicited telemarketing text messages to his cellular telephone number ending in 7329 ("the 7329 Number") through the use of an Automated Telephone Dialing System ("ATDS").

33.     Smith has never done business with Defendant, has never had a mortgage nor has he ever considered purchasing a home through the use of a mortgage.

34.     Further, Smith never consented to receive telemarketing text messages from Defendant, and is incognizant by the means in which Defendant illegally ascertained his cellular telephone number.

35.     Prior to receiving unsolicited telemarketing text messages from Defendant, Smith had previously registered his cellular telephone number with the National Do Not Call Registry.

36.     Smith has been registered on the National Do Not Call Registry since October 30, 2018.

37.     Upon information and belief, Defendant and/or its agent lacks a sufficiently adequate system for limiting autodialed text messages to cellular phones

for which it does not have prior express permission to call. These are unsolicited text messages sent for the purpose of marketing to potential customers.

38.     From the period of May of 2019 to the presents, Defendant, or Defendant's agent sent Smith no less than twelve (12) individual unsolicited telemarketing text messages from two (2) separate SMS long code numbers, using an ATDS.

39.     The unsolicited telemarketing text messages sent to Smith's cellular telephone were sent from the following SMS long code numbers: (1) (561) 264-5581 and (2) (561) 571-9911, both of which are operated by or on behalf of Defendant, and advertised promotions and sales.  Such advertised promotional text messages sent from Defendant or it's agent to Smith's cellular telephone  include, but are not limited to, the following:

> Rates have changed for the purchase loan offer for the property in Murphy, NC. Rates look better than 90 days ago and are now as low as 2.9% 3.1 APR. Here you go: https://rateinform.com/3adda23f or call (855) 284-3282
>
> (561) 571-9911 · Aug 26, 2019

40.     Each of the unsolicited text messages direct Smith to visit Defendant's website https://rateinform.com/3adda23f.

41.     The website https://rateinform.com/3adda23f is owned, maintained, and/or operated by the Defendant.

42.     Each of the unsolicited text messages direct Smith to call the telephone number (855) 284-3282.

43.     The telephone number (855) 284-3282.is owned, maintained, and/or operated by the Defendant.

44.     Upon information and belief, Defendant utilized the use of SMS long code numbers to dupe consumers such as Smith, as when a text message or telephone call originates from a standard 10- digit number with an area code that is the same as the recipient's, the recipient is more likely to believe it is coming from a live person, not an ATDS and is ultimately more likely to respond to the unsolicited telemarketing call/text message, commonly referred to as a Robocall.

45.     Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services.

46.     Smith is the subscriber and sole user of the 7329 Number, and is financially responsible for phone service to the 7329 Number.

47.     The unsolicited telemarketing text messages defendants sent or pause to be sent to Smith cellular telephone do not incorporate any instructions on how the recipient May opt out from receiving further telemarketing messages– in direct violation of 47 U.S.C § 227(c)(1) and 47 C.F.R § 641200(b)(3)

48.     On or about December 17th 2019, Smith sent Defendant a letter by regular mail notifying Defendant that the text messages being sent to his cellular telephone where unwanted, intrusive and in direct violation of the TCPA; Defendant has never responded to Smith's letter, nor has Defendant stopped sending telemarketing text messages to Smith's cellular telephone.

49.     Upon information and belief, Defendant fails to maintain a list of persons who request not to receive telemarketing text messages.

50.     The generic nature of Defendant's text messages, combined with the large number of messages sent by Defendant and the use of SMS long codes in sending the messages demonstrates that Defendant utilizes an ATDS in transmitting the messages.

51.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse,* in an automated fashion without human intervention.

52.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse.*

53.     Defendant's violations of the TCPA were knowing and willful.

54.     Defendant's unsolicited text messages caused Smith actual harm and cognizable legal injury. This includes invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Smith's daily life, a loss of value realized for the monies paid to Smith's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Smith's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

**FIRST CAUSE OF ACTION**

**Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)**

55.     Smith incorporates the foregoing allegations as if fully set forth herein.

56.     Defendant violated the TCPA by sending unsolicited text messages to Smith's cellular telephone without first obtaining prior express consent and using equipment which constitutes an automatic telephone dialing system for the express purpose of marketing Defendant's goods and services.

57.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited telemarketing text messages to Smith's cellular telephone without his prior consent.

58.     By making unsolicited telephone calls to Smith's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

59.     Defendant's unlawful conduct caused Smith to suffer actual damages  in the form of invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Smith's daily life, a loss of value realized for the monies paid to Smith's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Smith's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

60.     As a result of the aforementioned violations of the TCPA, Smith is entitled to, inter alia, a minimum of $500 in damages for each such violation of section 227(b)(3)(B) of the TCPA.

61.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Smith.

62.     Smith is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending unsolicited unsolicited commercial spam text messages to Smith's cellular telephone number in the future.

**WHEREFORE**, Smith prays for the following relief:

a.   An injunction prohibiting Defendent from sending text messages, through the use of an ATDS, or otherwise, to Smith's cellular telephone in the future;

b.   An award of actual and statutory damages;

c.   Reasonable attorney's fees and costs, and,

d.   Such further and other relief this Court deems reasonable and just.

**SECOND CAUSE OF ACTION**
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***

63.     Smith realleges and and incorporate by reference each and every allegation set forth in paragraphs 1-54.

64.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited telemarketing text messages to Smith's cellular telephone number through the use of an ATDS.

65.     Defendant's unlawful conduct caused Smith to suffer actual damages in the form of invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Smith's daily life, a loss of value realized for the monies paid to Smith's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Smith's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

66.     As a result of the aforementioned violations of the TCPA, Smith is entitled to, inter alia, a minimum of $500 in damages for each such violation of section 227(b)(3)(B) of the TCPA.

67.     To the extent Defendant's misconduct is determined Defendants' and/or their affiliates or agents knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Smith is entitled to treble damages of up to $1,500 for each and every text message violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

68.     Smith is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending

14

unsolicited unsolicited telemarketing text messages to his cellular telephone number, in the future.

**WHEREFORE**, Smith prays for the following relief:

         a.  An injunction prohibiting Defendent from sending text messages, through the use of an ATDS, or otherwise, to Smith's cellular telephone in the future;

         b.  An award of actual and statutory damages;

         c.  Reasonable attorney's fees and costs, and,

         d.  Such further and other relief this Court deems reasonable and just.

**THIRD CAUSE OF ACTION**
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.**

69.    Smith realleges and and incorporate by reference each and every allegation set forth in paragraphs 1–54.

70.    Defendant made unsolicited and unwanted telemarketing calls to the cellular telephone number belonging to Smith in an effort to promote and market its services even after Smith informed Defendant the telemarketing text messages being sent to his cellular telephone were intrusive and in violation of the TCPA.

71.    By making unsolicited telephone calls to Smith's cellular telephone after he requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

72.    Defendant's unlawful conduct caused Smith to suffer actual damages in the form of invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Smith's daily life, a loss of value realized for the

monies paid to Smith's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Smith's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

73.     As a result of the aforementioned violations of the TCPA, Smith is entitled to, inter alia, a minimum of $500 in damages for each such violation of section 227(b)(3)(B) of the TCPA.

74.     To the extent Defendant's misconduct is determined Defendants' and/or their affiliates or agents  knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Smith is entitled to treble damages of up to $1,500 for each and every text message violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

75.     Smith is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited unsolicited telemarketing text messages to his cellular telephone number, in the future.

**WHEREFORE**, Smith prays for the following relief:

    a.  An injunction prohibiting Defendent from sending text messages, through the use of an ATDS, or otherwise, to Smith's cellular telephone in the future;

    b.  An award of actual and statutory damages;

    c.  Reasonable attorney's fees and costs, and,

d.   Such further and other relief this Court deems reasonable and just.

### FOURTH CAUSE OF ACTION
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***

76.      Smith realleges and and incorporates by reference each and every allegation set forth in paragraphs 1-54.

77.      The TCPA, specifically 47 U.S.C. § 227(c), provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may bring a private action based on a violation of said regulations" which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

78.      The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

79.      47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket Case 4:16-cv-11010-DHH Document 1 Filed 06/01/16 No. 02-278, FCC 03-153, *'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'"* (the "Report and Order").

80.      The Report and Order, in turn, states as follows:

> *The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, Smith concludes that these rules apply to calls made to wireless telephone numbers. Plaintiff Eric Smith believes that wireless subscribers should be afforded the same protections as wireline subscribers.*

81.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

A.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

B.  Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

C.  If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls (texts) from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential

subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request .

D.  A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

E.  In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

F.  A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

82.     Defendant violated § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers, specifically Smith, who previously registered his telephone number on the National Do Not Call Registry.

83.     Further, Smith never provided any form of consent to receive telephone calls from Defendant and notified Defendant that the texts in question were intrusive and unlawful.  Defendant does not have a current record of consent to place telemarketing calls to him.

84.     Defendant also violated § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, specifically Smith's cellular telephone number, without instituting procedures that comply with the regulatory minimum standards for having a written policy, available on demand, for maintaining a list of persons who request not to receive telemarketing calls from them, without training its employees or personnel in the use of its do not call list, and in not recording and honoring do not call requests.

85.     Additionally, Defendant further violated 47 U.S.C. § 227(c)(5) because Smith received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

86.     Defendant's unlawful conduct caused Smith to suffer actual damages in the in the form of invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Smith's daily life, a loss of value realized for the monies paid to Smith's wireless carrier for the receipt of such texts, a loss of the use and enjoyment of Smith's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the

consumption of battery life that result from the placement and receipt of such unwanted texts, among other harms.

87.    As a result of the aforementioned violations of the TCPA, Smith is entitled to, inter alia, a minimum of $500 in damages for each such violation of section 227(b)(3)(B) of the TCPA.

88.    To the extent Defendant's misconduct is determined Defendants' and/or their affiliates or agents  knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), Smith is entitled to treble damages of up to $1,500 for each and every text message violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

89.    Smith is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending unsolicited unsolicited telemarketing text messages to his cellular telephone number, in the future.

**WHEREFORE**, Smith prays for the following relief:

    a.  An injunction prohibiting Defendent from sending text messages, through the use of an ATDS, or otherwise, to Smith's cellular telephone in the future;

    b.  An award of actual and statutory damages;

    c.  Reasonable attorney's fees and costs;  and,

    d.  Such further and other relief this Court deems reasonable and just.

### JURY DEMAND

90.    Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

91.     Smith demands that Defendant take affirmative steps to affirmative measures to retain, collect, and ensure that no potentially relevant documents, records, or information (including electronic information) are inadvertently altered, lost, or destroyed. Smith further demands that Defendant shall preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Smith and the communication or transmittal of the text messages and calls as alleged herein.

Date: February 7th 2020

Respectfully Submitted,

**ERIC SMITH**

Eric Smith
*Pro se Plaintiff*
520 North Ocean Blvd. Unit 19
Pompano Beach, FL 33062
(Telephone) (561) 285-7329
*(Email) easmith.fl@gmail.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed in person with the Clerk of The Court in Fort Lauderdale, Florida on this 7th day of February 2020; which once entered by the Clerk will generate Notices of Filing to all parties that have signed up for CM/ECF.

By: _____

      **ERIC SMITH**